1
2
3
4
5
6
7
8
9
10

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| CHARLENE MCCORMICK, an individual;<br>SYLINA KIDD, an individual;<br>DOUGLAS KIDD, an individual;<br>ROBERT CROCKER, an individual;<br>WILLIAM CROCKER, an individual;<br>VINCENT CHAMBERS, an individual;<br>GERALD SCHIFF, an individual | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil No.:3:12cv0433 AJB (WMc)<br><br>ORDER GRANTING DEFENDANT U.S. BANK'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT |
| Plaintiffs,<br>v.<br><br>US BANK, N.A., a National Banking association; and<br>DOES I – XX, inclusive,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | (Doc. No. 32) |

This is an action involving multiple Plaintiffs who allege individual negligence claims against U.S. Bank, N.A. ("U.S. Bank"). Presently before the Court is U.S. Bank's motion to dismiss Plaintiffs' Second Amended Complaint ("SAC"). (Doc. No. 30.) Plaintiffs filed an opposition on January 11, 2013, (Doc. No. 34), and U.S. Bank filed a reply on January 15, 2013, (Doc. No. 35). In accordance with Civil Local Rule 7.1.d.1, the Court finds the motion suitable for determination on the papers and without oral argument. Accordingly, the motion hearing set for March 14, 2013 is hereby vacated. For the reasons set forth below, the Court GRANTS U.S. Bank's motion with regard to

claims alleged by Plaintiffs Charlene McCormick, Robert Crocker, William Crocker, Vincent Chambers, and Gerald Schiff with prejudice; and GRANTS U.S. Bank's motion with regard to claims alleged by Plaintiffs Sylina and Douglas Kidd without prejudice.

## *BACKGROUND*

### I.    Procedural History

On January 13, 2012, Plaintiffs Charlene McCormick, Douglas Kidd, Sylina Kidd, Robert Crocker, William Crocker, Vincent Chambers, and Gerald Schiff (collectively, "Plaintiffs") filed a complaint against U.S. Bank. (Doc. No. 1, Ex. A at 11.) The complaint alleged various causes of action arising from Plaintiffs' individual mortgage loans, including: (1) privity of contract; (2) rescission; (3) negligence in origination; (4) negligence in servicing; (5) intentional misrepresentation; (6) conspiracy to commit civil tort; (7) and violation of California's Unfair Competition Law ("UCL"). (*Id*.)

On February 17, 2012, U.S. Bank removed the action to this Court on the basis of diversity jurisdiction and federal question jurisdiction. (Doc. No. 1 at 2-4.) On March 9, 2012, Plaintiffs filed a motion to remand, (Doc. No. 8), subsequently followed by their First Amended Complaint ("FAC"), (Doc. No. 11). The FAC added Temecula Valley Bank (a non-diverse party) and Mortgage Electronic Registration Systems, Inc. ("MERS") as Defendants. (*Id*. at 5.) The FAC also removed the UCL cause of action, which had been the sole basis for federal question jurisdiction. (Doc. No. 1 at 4.) The Court denied Plaintiffs' motion to remand on August 20, 2012. (Doc. No. 27.)

However, on July 2, 2012, while the motion to remand was still pending, U.S. Bank and MERS filed a motion to dismiss the FAC. (Doc. No. 19.) On October 30, 2012, the Court granted the motion, providing Plaintiffs limited leave to amend the complaint, but only with regard to the second cause of action for rescission and third and fourth causes of action for negligence. (Doc. No. 29.) Plaintiffs filed the operative SAC on November 30, 2012, which alleges a single cause of action for negligence in servicing against U.S. Bank. (Doc. No. 30.) U.S. Bank now moves to dismiss the negligence claim as to each individual Plaintiff. (Doc. No. 32.)

## II.     Factual Background

The allegations in the SAC concern five separate mortgage loans, each of which was obtained independently by one or more of the individual Plaintiffs.  Thus, although Plaintiffs allege a single cause of action against U.S. Bank, the factual basis for each claim depends heavily on the individual representations made to each Plaintiff in the servicing and/or successful or unsuccessful modification of their loans.  Accordingly, each loan is discussed in detail below.

### A.     Chambers Loan

On or about May 21, 2008, Vincent Chambers and Maria Prieto ("Chambers", husband and wife, borrowed $634,500.00 from U.S. Bank to purchase the property located at 763 Hill View Way, Chico, California 95926 ("Chambers Loan").  (Doc. No. 30 at 6:14-17.)  In late 2008, Mr. Chambers inquired about a loan modification with Matt Griffin, a "Mortgage Specialist" at his local U.S. Bank.  (*Id*. at 17:23-25.)  At this time, Mr. Chambers was informed that he was not eligible for a loan modification because his mortgage payment was not 22% of his gross income.  (*Id*.)  However, Mr. Griffin allegedly told Mr. Chambers that he might later qualify for a loan modification if he stopped making payments on his loan.  (*Id*.)  U.S. Bank denies this statement was ever made.  (Doc. No. 32 at 9:23.)

Nonetheless, Mr. Chambers chose not to fall behind on his payments, (Doc. No. 30 at 17:26-27), and submitted a loan modification application to U.S. Bank.  (*Id*. at 18:3-5.)  Since this time, Mr. Chambers alleges he has tried to contact U.S. Bank numerous times, but each time he is transferred from one department to another, the employees are unable to offer him any assistance, and no one can answer any of his questions regarding his loan modification application.  (*Id*. at 18:6-8.)  Accordingly, Mr. Chambers alleges that U.S. Bank owed him a duty by accepting his loan modification application, and breached this duty by failing to adequately communicate with him.  (*Id*. at 18.)  As a result, Mr. Chambers contends he has suffered severe emotional distress, anxiety, and frustration.  (*Id*. at 18:17-19.)

**B.   Crocker Loan**

On or about April 29, 2004, Lois Crocker refinanced the property located at 3190-3192 Dovecrest Court, Spring Valley, California 91977 ("Crocker Loan").  (*Id*. at 25; Doc. No. 32, Def.'s RJN, Exs. C, D.)  The Crocker Loan was acquired from Temecula Valley Bank, and was a 30 year fixed rate loan at 6.25% in the amount of $390,000.  (Doc. No. 30 at 6:19-24; Doc. No. 32, Def.'s RJN.)  The loan was secured by a Deed of Trust, which was recorded on April 24, 2004, and required monthly payments in the amount of $2,401.30.  (Doc. No. 32, Def.'s RJN, Ex. D.)  However, after Lois Crocker died, Lois' son Robert Crocker occupied the property.

Robert Crocker alleges that he attempted to modify the Crocker loan in July 2009, but was denied because his name was not on the loan or listed on the title to the property.  (*Id*. at ¶114.)  The Crockers further allege that William Crocker, Lois' husband, was denied a modification because he was not residing in the property at the time his loan modification application was submitted.  (Doc. No. 32 at 4:2-8.)  However, as set forth in U.S. Bank's request for judicial notice, it appears William Crocker ultimately executed a "Loan Modification Agreement" on September 13, 2009, which amended the original Note and Deed of Trust.  (Doc. No. 32, Def.'s RJN, Ex. E at 39-46.)  Although this modification was in fact successful, the Crockers contend that U.S. Bank failed to inform them that their monthly payments would increase.  (Doc. No. 30 at 19:18-20.)  The Crockers further allege that U.S. Bank's refusal to use Robert Crocker's financial information to approve the modification agreement was improper because they used his information to approve the forbearance agreement.  (*Id*. at 18:21-24.)

Ultimately, however, the Crockers fells behind in their mortgage payments and the property went into foreclosure in 2011.  (Doc. No. 32 at 3:22-23.)  The property has not yet been sold in foreclosure.  (Doc. No. 30 ¶ 125.)  Accordingly, the Crockers allege that U.S. Bank created a duty by accepting their loan modification application and granting them a forbearance, (Doc. No. 32 at 22), and breached this duty by failing to adequately communicate with them, (Doc. No. 30 ¶ 114).  As a result, the Crockers contend to have

suffered loss in income, severe stress, anxiety, damage to their credit rating, and financial damage to the family trust.  (*Id*. ¶¶123, 124, 125.)  Robert Crocker also claims to have wasted a significant amount of time on the phone speaking about his modification application, which was ultimately unsuccessful.  (*Id*. at ¶115-116.)

### C.   Kidd Loan

On or about January 12, 2006, Douglas Kidd and his wife Sylina Kidd ("Kidd') refinanced their mortgage loan with Downey Savings and Loan ("Downey").  (Doc. No. 30 ¶ 26.)  The Kidds refinanced the property located at 2585 Royal Saint James Drive, El Cajon, California 92019, with an Adjustable Rate Note in the amount of $460,000.00. (Doc. No. 32, Def.'s RJN, Exs. G, H.)  Section Two of the Note set forth specific details regarding the initial interest rate, the maximum interest rate, and when and how the interest rate may change; and Section Three of the Note set forth the initial monthly payments, when/how the monthly payments may change, and how the monthly payment was calculated.  (Doc. No. 32, Def.'s RJN, Ex. H.)

The Kidds first tried to modify their loan in 2008, and allege that they were "strung along" and "required to complete the same paperwork on three different occasions" before Downey eventually agreed to modify their loan in April 2008.  (*Id*. at ¶ 128.) Although their loan was eventually modified, the Kidds allege that the modification was insufficient because despite initially lowering their interest rate to 6%, the interest rate on the loan increased every six months thereafter.  (*Id*.)  The Kidds also claim that they submitted payments to Downey to pay down the principal under the modification, that Downey received these payments, but that these payments were never credited to their account or properly returned to them.  (*Id*. at ¶¶ 128, 129.)

In late 2008 U.S. Bank acquired Downey, and in the process, U.S. Bank became the servicer of the Kidds' loan.  (*Id*. at 6:26-27.)  The Kidds then applied for a second modification to their loan, this time with U.S. Bank.  (*Id*. at ¶ 131.)  However, the Kidds allege this second modification attempt was frustrated because U.S. Bank did not return their phone calls, did not answer their questions, and as a result, they were forced to

1  resend documents numerous times.  (*Id*.)  During this process, the Kidds' loan was

2  allegedly referred to collections, even though U.S. Bank had informed them not to make

3  payments on the loan during the modification process.  (*Id*. at ¶ 135.)

4       Finally, in August 2009, the Kidds successfully modified their loan.  (*Id*. at ¶ 139.)

5  Nonetheless, the Kidds contend that the modification has provided insufficient assistance.

6  (*Id*.)  Accordingly, the Kidds allege that U.S. Bank owed them a duty of care by accept-

7  ing/granting their loan modification, and breached this duty by failing to properly apply

8  the Kidds' loan payments to their mortgage debt, thereby misrepresenting the status of

9  their loan to both the Kidds and various credit reporting bureaus.  (*Id*. at ¶ 138.)  As a

10  result, the Kidds assert they have lost of equity in their home, and have suffered severe

11  stress, anxiety, and financial harm due to the non-credited mortgage payments previously

12  submitted to Downey.  (*Id*. at ¶¶ 141, 142.)

13       **D.   McCormick Loan**

14       On May 11, 2006, Charlene and Robert McCormick ("McCormick") borrowed

15  $132,335.00 at a rate of 6% to be paid over 30 years.  (*Id*. at 7:4-8; Doc. No. 32, Def.'s

16  RJN, Exs. M, N.)  The Note was secured by a Deed of Trust on the property located at

17  1204 Karen Avenue, Benton City, Washington 99320.  (*Id*. at Exs. M, N.)  After Robert

18  McCormick passed away, Charlene McCormick was no longer able to make payments on

19  the loan.  (*Id*. at 22:18-21.)  Charlene McCormick has submitted two loan modification

20  applications, the latest to US Bank  (*Id*.)

21       The first loan modification application was completed though the submission of a

22  hardship letter and a telephone call to U.S. Bank, wherein Charlene McCormick alleges

23  she was informed she would not qualify due to insufficient income.  (Doc. No. 30 ¶¶ 144,

24  145.)  Charlene McCormick has since submitted a second loan modification application,

25  which was pending review at the time the SAC was filed.  (Doc. No. 30 at 23:5-6.)

26  However, Charlene McCormick claims she was assigned a Relationship Manager, Karen

27  Grag, who has stopped responding to her telephone calls and emails regarding the status

28  of her second modification application.  (Doc. No. 30 at 23:7-9.)  Accordingly, Charlene

McCormick contends U.S. Bank owed her a duty in accepting her modification agree-ment. and subsequently breached this duty by failing to communicate with her. (Doc. No. 30 ¶¶ 149-52.) As a result, Ms. McCormick claims to have suffered severe stress, an inability to sleep, and a flare up of several medical conditions that have caused her to become bedridden. (*Id.* at ¶ 152.)

### E.   Schiff Loan

On October 23, 2006, Gerald Schiff ("Schiff") entered into an Adjustable Rate Note with Downey to borrow $1,250,000.00. (Doc. No. 32, Def.'s RJN, Ex. O.) The Note was secured by a Deed of Trust on the property located at 46299 Pfeiffer Ridge Road, Big Sur, California 93920. (*Id.*) Due to the downturn in the economy, Schiff was unable to pay his mortgage. (Doc. No. 32 at 5:24-25.) Schiff has applied for three separate loan modifications, but each of his requests have been denied. (*Id.* at 23:20-21.)

During the modification process, Schiff asserts that he was required "to send in the same prolific documentation" because U.S. Bank claimed they never received the documents he sent. (*Id.* at 23:22-25.) Schiff further asserts that U.S. Bank has provided inconsistent reasons for denying each of his modification applications. (*Id.* at 24:1-6.) Accordingly, Schiff contends that U.S. Bank owed him a duty of care because they are an authorized lending institution under the Home Affordable Modification Program ("HAMP"), and accepted his loan modification application for processing. (Doc. No. 30 at 24:5-6.) Thus, Schiff contends U.S. Bank breached this duty by failing to properly communicate with him about his loan status and/or failing to correctly process his documents, or in the alternative, by misrepresenting the modification submission instructions. (*Id.* at 24:5-10.) As a result, Mr. Schiff claims to have suffered damages in the form of undue stress, a lack of sleep, and lost income resulting from the time he spent away from work to comply with U.S. Bank's modification application process. (*Id.* at 24:20-24.)

//

//

### *LEGAL STANDARD*

**I.    Motion to Dismiss**

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the pleadings and allows a court to dismiss a complaint upon a finding that the plaintiff has failed to state a claim upon which relief may be granted.  *See Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  The court may dismiss a complaint as a matter of law for: (1) "lack of cognizable legal theory," or (2) "insufficient facts under a cognizable legal claim." *SmileCare Dental Grp. v. Delta Dental Plan of Cal*., 88 F.3d 780, 783 (9th Cir. 1996) (citation omitted).  However, a complaint survives a motion to dismiss if it contains "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Notwithstanding this deference, the reviewing court need not accept "legal conclusions" as true.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).  It is also improper for the court to assume "the [plaintiff] can prove facts that [he or she] has not alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).  On the other hand, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  *Iqbal*, 556 U.S. at 678.  The court only reviews the contents of the complaint, accepting all factual allegations as true, and drawing all reasonable inferences in favor of the nonmoving party.  *al-Kidd v. Ashcroft*, 580 F.3d 949, 956 (9th Cir. 2009) (citations omitted).

However, in actions "alleging fraud or mistake, a party must state with particularity the circumstances constituting [the] fraud or mistake."  Fed. R. Civ. P. 9(b).  These circumstances include the "time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations."  *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (quoting *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1066 (9th Cir. 2004)); *In re GlenFed Sec. Litig.*, 42 F.3d 1541, 1547-49 (9th Cir. 1994).  Rule 9(b) requires fraud claims to be specific enough to give defendants notice of the particu-

lar misconduct that is alleged to constitute the fraud charged, so that defendants can defend against the charge and not just deny that they have done anything wrong. *Id.* (citing *Bly–Magee v. Cal.*, 236 F.3d 1014, 1019 (9th Cir. 2001)). Accordingly, in averments of fraud or misrepresentation, a plaintiff must specifically set forth what is false or misleading about a statement, and why it is false. *Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (citing *Decker v. GlenFed, Inc.*, 42 F.3d 1541, 1548 (9th Cir. 1994)).

## II.     Leave to Amend Under Rule 15(a)

Under Federal Rule of Civil Procedure 15(a), leave to amend should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2). This rule is intended to "facilitate decisions on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (internal quotation marks and alterations omitted). When dismissing a complaint for failure to state a claim, " 'a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts.'" *Id.* at 1130 (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir.1995)). However, leave to amend may be denied if a court determines that allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir.1986). Leave to amend may also be denied for repeated failure to cure deficiencies by previous amendment. *Foman v. Davis*, 371 U.S. 178, 182 (1962).

## *JUDICIAL NOTICE*

A district court may consider a limited set of documents without converting a Rule 12(b)(6) motion into a motion for summary judgment: (1) documents attached to the complaint; (2) documents incorporated by referenced in the complaint; or (3) matters that can be judicially noticed. *See United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003); *MGIC Indemnity Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986).

Here, U.S. Bank requests judicial notice of eighteen (18) documents, including: (1) the Deed of Trust relating to the Chambers Loan, (Doc. No. 32, Def.'s RJN, Ex. A), the Crocker Loan, (Doc. No. 32, Def.'s RJN, Exs. C, F), the Kidd Loan (Doc. No. 32, Def.'s RJN, Exs. G, K), the McCormick Loan, (Doc. No. 32, Def.'s RJN, Ex. M), and the Schiff Loan, (Doc. No. 32, Def.'s RJN, Ex. O); (2) the Note relating to the Chambers Loan, (Doc. No. 32, Def.'s RJN, Ex. B), the Crocker Loan (Doc. No. 32, Def.'s RJN, Ex. D), the Kidd Loan, (Doc. No. 32, Def.'s RJN, Exs. H, J), the McCormick Loan, (Doc. No. 32, Def.'s RJN, Ex. N), and the Schiff Loan (Doc. No. 32, Def.'s RJN, Ex. P); (3) the Loan Modification Agreements relating to the Crocker Loan, (Doc. No. 32, Def.'s RJN, Ex. E), and the Kidd Loan, (Doc. No. 32, Def.'s RJN, Exs. I, L); (4) the Notice of Default relating to the Crocker Property, (Doc. No. 32, Def.'s RJN, Ex. Q); and (5) the Substitution of Trustee relating to the Crocker Property, (Doc. No. 32, Def.'s RJN, Ex. R).  As Plaintiffs do not object to U.S. Bank's request, and all the requested documents are matters of public record, the Court GRANTS U.S. Bank's request for judicial notice as to all (18) documents.[1]  *See Lee v. City of L.A.*, 250 F.3d 668, 689 (9th Cir. 2001) (taking judicial notice of the existence of the documents, but not the truth of disputed matters asserted therein).

## *DISCUSSION*

### I.   **Negligence in Servicing**

The sole remaining cause of action in the SAC alleges that U.S. Bank was negligent in the servicing of each of Plaintiffs' loans.  To a prove a cause of action for negligence, a plaintiff must show: "(1) a legal duty to use reasonable care; (2) breach of that duty; and (3) proximate [or legal] cause between the breach and (4) the plaintiff's injury."  *Mendoza v. City of L.A.*, 66 Cal. App. 4th 1333, 1339 (Cal. Ct. App. 1998).  "The existence of a legal duty to use reasonable care in a particular factual situation is a

---

[1] Plaintiffs originally objected to U.S. Bank's request for judicial notice, stating in their Opposition, that detailed objections would be filed at a later date.  (Doc. No. 34 at 4:22-24.)  However, Plaintiffs failed to file any objections and subsequently stated that they did not intend to object to U.S. Bank's request for judicial notice.  (Doc. No. 35, Güereza Decl., Ex. A.)

question of law for the court to decide." *Vasquez v. Residential Invs., Inc.*, 118 Cal. App. 4th 269, 278 (2004); *Jacoves v. United Merchandising Corp.*, 9 Cal. App. 4th 88 (Cal. Ct. App. 1992) (finding that whether a legal duty arises "is a question of law which is simply an expression of the sum total of the policy considerations that lead a court to conclude that a particular plaintiff is entitled to protection").

Here, Plaintiffs allege that by agreeing to consider, process, and/or complete their modification applications, U.S. Bank owed each Plaintiff a duty to properly communicate with them and/or process their loan modification requests, and breached this duty by failing to return their calls, timely process their modification applications, and/or ensure the modification was otherwise in the Plaintiffs' best interest.  U.S. Bank moves to dismiss the negligence claim as to each individual Plaintiff, arguing that the SAC: (1) fails to meet the specificity requirement under Rule 9(b); (2) fails to show the existence of a legal duty between U.S. Bank and any of the Plaintiffs; and (3) fails to show how this alleged duty was otherwise breached thereby causing Plaintiffs damage.  (Doc. No. 32 at 7:24-26.)

The Court first addresses whether a legal duty was established between each of the Plaintiffs and U.S. Bank, and then considers, where necessary, whether Plaintiffs have sufficiently plead the remaining negligence elements—breach, causation, and damages. To the extent the Court finds Plaintiffs' allegations are based on fraud or negligent misrepresentations, the Court addresses U.S. Bank's contentions under Rule 9(b). Accordingly, as discussed below, because the Court finds U.S. Bank did not owe Plaintiffs Vincent Chambers, Robert and William Crocker, Charlene McCormick, and Gerald Schiff a legal duty, and any further amendment as to these Plaintiffs would be futile, the Court jointly addresses the issue of legal duty as to these Plaintiffs, and separately addresses the claims raised by Plaintiffs Douglas and Sylina Kidd.

### A.    Duty

"As a general rule, a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its

conventional role as a mere lender of money." *Nymark v. Heart Fed. Savings & Loan Ass'n.*, 231 Cal. App. 3d 1089, 1096 (Cal Ct. App. 1991).  This general rule also applies to loan servicers.  *See Castaneda v. Saxon Mortg. Servs.*, 687 F. Supp. 2d 1191, 1198 (E.D. Cal. 2009) (noting that a loan servicer owes no duty of care to borrower).  However, this no-duty rule does not apply "when the lender's activities exceed those of a conventional lender." *Osei v. Countrywide Home Loans*, 692 F. Supp. 2d 1240, 1249 (E.D. Cal. 2010); *Wagner v. Benson*, 101 Cal. App.3d 27, 35 (Cal. Ct. App. 1980) ("Liability to a borrower for negligence arises only when the lender 'actively participates' in the financed enterprise 'beyond the domain of the usual money lender.' ") (quoting *Connor v. Great W. Sav. & Loan Ass'n.*, 69 Cal. 2d 850, 864 (1968)).

Nonetheless, even when the lender is acting within the scope of a conventional lender, the no-duty rule is only a general rule.  *Osei*, 692 F. Supp. 2d at 1249.  Thus, in order to determine whether a duty exists, the court balances six non-exhaustive factors established by the California Supreme Court in *Biakanja v. Irving*, 49 Cal. 2d 647, 650 (1958) ("*Biakanja* factors"); *see also Nymark*, 231 Cal. App. 3d at 1098.  These include: (1) the extent to which the transaction was intended to affect the plaintiff; (2) the foreseeability of harm to the plaintiff; (3) the degree of certainty that the plaintiff suffered injury; (4) the closeness of the connection between the defendant's conduct and the injury suffered; (5) the moral blame attached to the defendant's conduct; and (6) the policy of preventing future harm.  *Nymark*, 231 Cal. App. 3d at 1098.  Although *Biakanja* reasoned that this test determines "whether in a specific case the defendant will be held liable to a third person not in privity" with the defendant, 49 Cal.2d at 650, 320 P.2d 16, *Nymark* held that this test also determines "whether a financial institution owes a duty of care to a borrower-client."  231 Cal. App. 3d at 1098.

### 1.    The Chambers, Crocker, McCormick, and Schiff and Loans

In light of the *Biakanja* factors and corresponding case law in the Ninth Circuit, the Court finds Plaintiffs Vincent Chambers, Robert and William Crocker, Charlene McCormick, and Gerald Schiff have each failed to establish that U.S. Bank exceeded the

role of a traditional lender and thus owed them a legal duty of care. *Biakanja,* 49 Cal. 2d at 650; *Champlaie v. BAC Home Loans Servicing*, LP, 706 F. Supp. 2d 1029, 1062 (E.D. Cal. 2009) (dismissing plaintiffs negligence in servicing claims finding Bank of America did not exceed its role as a traditional lender).

With regard to the first *Biakanja* factor, the Court considers the degree to which the individual transactions were intended to affect the individual Plaintiffs. *Biakanja,* 49 Cal. 2d at 650. To the extent a loan modification application was never in fact approved by the lender, courts have found that such transactions are too attenuated, and thus weigh against imposing liability on a lender.[2] In addition, because lenders have no legal duty to modify an existing loan, denial of a modification application, without more, has also been held to be insufficient to impose a legal duty on a lender. *See generally, Ruiz v. Saxon Mortgage Servs.,* 2009 WL 1872465, at *2 n.2 (C.D. Cal. June 29, 2009) (Section 2923.6 is not "to be construed [as imposing] any mandatory duty . . ."); *Mabry v. Super. Ct.*, 185 Cal. App. 4th 208, 214, 226-32 (Cal. Ct. App. 2010) (California Civil Code Section 2923.5 does not require the lender to modify the loan); *see also Watkinson v. Mortgage IT, Inc.*, 10-CV-327-IEG (BLM), 2010 WL 2196083, at *6 (S.D. Cal. June 1, 2010) ("Under California law, borrower who claimed that lender overstated his income and the value of his property on a mortgage loan application and knew that both pieces of information were false, sufficiently alleged that lender owed him a duty of care based on the fact that lender intended to induce him to enter into the loan transaction.).

Here, Plaintiffs Chambers, Robert and William Crocker, McCormick, and Schiff all submitted loan modification applications to U.S. Bank.[3] However, as of the filing of

---

[2] *Argueta v. JP Morgan Chase.*, Civ. No. 2:11-441 WBS GGH, 2011 WL 2619060, at *5 (E.D. Cal. June 30, 2011) (defendant's mere acceptance of plaintiff's modification application did not impose a duty of care); *Dooms v. Fed. Home Loan Mortg. Corp.*, Civ. No. 11–0352 LJO DLB, 2011 WL 1232989, at *12 (E.D. Cal. Mar. 31, 2011) (holding that the lender owed plaintiff no duty of care related to her loan modification attempts).

[3] "[Vincent] Chambers inquired about a loan modification with U.S. Bank in late 2008 . . . Later, Mr. Chambers . . . successfully submit[ed] a modification application to U.S. Bank." (Doc. No. 30 at 17:18; 18:2-3.) "On November 18, 2009, a Loan Modification Agreement, entered into between William Crocker and U.S. Bank . . . was

the SAC, or any recent filings by the Parties, Charlene McCormick and Vincent Chamber's modification applications are still pending and have not been approved or denied; Gerald Schiff and Robert Crocker's modification applications have been denied; and William Crocker's modification application was approved.[4]  Thus, absent affirmative misrepresentations on behalf of U.S. Bank that Plaintiffs' loans would in fact be modified—and not just representations that U.S. Bank would commence the modification process—merely accepting a modification application or denying an application is too passive an activity to warrant imposition of a legal duty.[5]

Moreover, Plaintiff Schiff's allegations that U.S. Bank owed him a legal duty as a result of requiring him to submit documents multiple times, or the Crockers' allegations that the modification failed to provide sufficient relief, and/or that U.S. Bank refused to consider certain documents when determining whether their loan modification would be accepted, also fail to establish how the individual transactions were intended to affect Plaintiffs.  First, it is well settled that absent mishandling of modification documents,

---

[4] recorded . . ." (Doc. No 32, Def.'s RJN at 2:20-21.)  "On September 1, 2009, Douglas Kidd and Sylina Kidd entered into a Modification Agreement with U.S. Bank . . ." (Doc. No. 32, Def.'s RJN at 3:22-23.)  Charlene McCormick "has applied [for a modification] a total of two times, with the latest attempt in December 2011." (Doc. No. 30 at 22:20-21.)  "[Gerald] Schiff first attempted to modify his loan with U.S. Bank in 2010.  He has since attempted to modify his loan three times." (Doc. No. 30 at 23:20-21.)

[4] "Ms. McCormick's second loan modification is currently pending review."  (Doc. No. 30 at 23:12.)  "Later, [Vincent] Chambers did successfully submit a modification application to U.S. Bank." (Doc. No. 30 18:2-3; Doc. No. 35 at 5:23-25.)  "Each time [Gerald] Schiff's modifications were denied."  (Doc. No. 30 at 24:1-2.)  "Robert Crocker, Lois' son, alleges that he attempted to modify the loan in 2009, but was denied . . ." (Doc. No. 32 at 3:9-10.)  "However, on September 13, 2009, William Crocker executed a 'Loan Modification Agreement' with US Bank . . ." (Doc. No. 32 at 3:14-15.)

[5] *Compare Ansanelli v. JP Morgan Chase Bank*, No. C 10–03892 WHA, 2011 WL 1134451, at *1 (N.D. Cal. Mar. 28, 2011) (finding that defendant bank owed plaintiff borrowers a duty of care because defendant granted plaintiff a trial modification plan, and *guaranteed* plaintiffs that if they made payments on time under the trial modification plan, which plaintiffs did, defendant would provide a permanent modification of their loan) (emphasis added), *with Lyons v. Bank of Am., NA*, 11-01232 CW, 2011 WL 3607608, at *4 (N.D. Cal. Aug. 15, 2011) (no duty of reasonable care in the processing and determination of plaintiffs' loan modification application when Defendants informed Plaintiffs that they would reduce the amount of the loan payments for a three month trial period but subsequently increased the payment amount before Plaintiffs could make the first payment).

poor communication on behalf of a lender resulting in multiple requests for documenta-
tion is not enough to warrant imposition of legal duty.  *Ottolini v. Bank of America, No.*
C-11-0477 EMC, 2011 WL 3652501 *7 (N.D. Cal. Aug. 19, 2011) (no duty of care,
despite lender's alleged mishandling of loan modification documents because the
modification was never acted upon).  The same is true for what documents a lender can
require from a borrower to approve a modification.  *See Argueta*, 2011 WL 2619060
(finding no legal duty when lender refused to accept any further documentation from
borrower proving that property was her primary residence).  Furthermore, to the extent
Plaintiffs Chambers and Schiff allege affirmative misrepresentations on behalf of U.S.
Bank, the Court finds these allegations fail to once again meet the heightened pleading
standard required by Rule 9(b); and nonetheless, would be insufficient, even if adequately
plead, to warrant imposing liability on U.S. Bank.[6]

Therefore, even though Plaintiffs Vincent Chambers, Robert and William Crocker,
Charlene McCormick, and Gerald Schiff all, to some extent, allege U.S. Bank mishandled
their loan modification applications, or in some way failed to adequately communicate
with them regarding the modification process, all of these allegations fall short of those
alleged in *Garcia v. Ocwen Loan Servicing*.  2010 WL 1881098 (N.D. Cal. May 10,
2010) (finding the lender owed the borrower a duty of care because the lender mishan-
dled documents, which permanently deprived the plaintiff of the possibility of obtaining
the requested relief).  Accordingly, because any alleged lack of communication between
U.S. Bank and the Plaintiffs, even if true, is too remote to justify imposing a legal duty on
U.S. Bank, the Court finds the first *Biakanja* factor weighs against imposing such a duty.

---

[6]  For example, although Plaintiff Chambers alleges he was instructed to stop
making payments on his loan if he wished to be considered for a loan modification, and
Plaintiff Schiff alleges he received inaccurate submission instructions, neither of these
allegations create a legal duty on behalf of U.S. Bank.  *See Dooms*, 2011 WL 1232989, at
*12 (finding no duty of care where plaintiff borrower stopped making payments on her
loan for three months after being told by defendant lender that to qualify for any loan
modification program she must be in default for three months).

The second through the fourth *Biakanja* factors focus on the foreseeability or certainty of the harm suffered by the individual plaintiff, and the closeness of the connection between the harm suffered and the defendant's conduct. *Biakanja*, 49 Cal. 2d 647, 650 (1958). Absent a likelihood of approval of a modification request, courts in the Ninth Circuit have found that the foreseeability of the harm to the plaintiff is too far removed from the defendant's conduct to warrant imposition of a legal duty. *Compare Ottolini*, 2011 WL 3652501 *7 ("[T]he harm to [plaintiff] was not particularly foreseeable since there is no indication that loan modification would actual be approved. Absent a likelihood of approval, [plaintiff] suffered no ultimate injury from the mishandling of his application. [T]he degree of certainty that [plaintiff] suffered injury is likewise minimal for the same reason"), *with Crilley v. Bank of Am., N.A.*, CIV. 12-00081 LEK, 2012 WL 1492413, at *9-10 (D. Haw. Apr. 26, 2012) (defendant went beyond its conventional role as a loan servicer by soliciting plaintiffs to apply for a loan modification; engaging with plaintiffs for several months by reassuring them they qualified for the HAMP loan modification program; and informing plaintiffs that they would receive a permanent loan modification if they made all of their trial payments on time).

Here, as stated above, despite accepting loan modification applications from Plaintiffs Vincent Chambers, Robert and William Crocker, Charlene McCormick, and Gerald Schiff, U.S. Bank never affirmatively stated that any of the modification applications would in fact be approved on Plaintiffs' requested terms. Nor did U.S. Bank enter into preliminary modification contracts with any of the Plaintiffs.[7] Thus, because a lender has no duty to modify a loan, *Dooms*, 2011 WL 1232989 at *12, complete a modification application once submitted, *DeLeon v. Wells Fargo Bank, N.A.*, Civ. No. 10–1390, 2010 WL 4285006, at *4 (N.D. Cal. Oct. 22, 2010), or rescue a borrower from hardship, *Sierra-Bay Fed. Land Bank Ass'n. v. Super. Ct.*, 227 Cal. App. 3d 318, 334

---

[7] *See Ansanelli*, 2011 WL 1134451, at *1 (finding defendant lender owed plaintiff borrowers a duty of care because defendant granted plaintiff a trial modification plan and *guaranteed* plaintiffs that if they made payments on time under the trial modification plan, which plaintiffs did, defendant would provide a permanent modification of their loan) (emphasis added).

1  (Cal. Ct. App. 1991), none of Plaintiffs' allegations establish a legal duty on behalf of

2  U.S. Bank.

3       In addition, courts in the Ninth Circuit have also held that allegations that a lender

4  instructed the borrower to fall behind in their loan payments in order to be considered for

5  a loan modification are also insufficient to establish a legal duty. *See Dooms*, 2011 WL

6  1232989, at *1. For example, in *Dooms v. Federal Home Loan Mortgage Corporation*,

7  the court held that the lender did not owe the borrower a separate and independent duty of

8  care, despite the fact that the lender advised the plaintiff that he must be "in default three

9  months" in order to "qualify for any loan modification program." *Id*. Thus, to the extent

10 Plaintiff Chambers alleges U.S. Bank represented to him that if he fell behind on his

11 payments he would have a better chance at obtaining a loan modification, on their own,

12 these allegations do not establish a legal duty on the part of U.S. Bank. *See also Sullivan*

13 *v. JP Morgan Chase Bank, NA*, 725 F. Supp. 2d 1087, 1094 (E.D. Cal. 2010) (stating that

14 lenders do not owe borrowers a duty of care not to misinform them about the loan

15 modification process, or by stating that the borrower will have a better chance at being

16 approved for a modification if they fall behind in their loan payments).

17      Finally, the same is true for lenders authorized to offer modifications under

18 HAMP. Courts in the Ninth Circuit have routinely held that because HAMP only

19 provides an incentive for lenders to modify preexisting loans, but does not otherwise

20 affirmatively require lenders to complete and/or approve loan modifications, lenders

21 operating under the HAMP program do not automatically owe every borrower who

22 submits a HAMP modification application a legal duty of care. *See Hernandez v. Aurora*

23 *Loan Servs., LLC*, CV 11-00607 AHM OPX, 2011 WL 6178881 (C.D. Cal. Dec. 13,

24 2011) (No duty of care created under HAMP); *Hernandez v. HomeEq Servicing*, 2010

25 WL 5059673, at *2–3 (E.D. Cal. Dec.6, 2010) (HAMP provides an incentive for lenders

26 to modify existing loans but it does not require such modifications). Therefore, Plaintiffs

27 Chambers and Schiff's allegations that U.S. Bank owed them a legal duty based on the

28 HAMP program also fail. (Doc. No. 30 at 17:21-22; 24:5-6.) Accordingly, the Court

finds the second through the fourth *Biakanja* factors also weigh against imposing a legal duty on U.S. Bank.

Finally, the Court finds the fifth *Biakanja* factor, which focuses on the moral blame attached to the defendant's conduct, and the sixth *Biakanja* factor, which focuses on the policy of preventing future harm, also weigh against imposing a legal duty on U.S. Bank. *Biakanja*, 49 Cal. 2d 647, 650 (1958). For example, although Plaintiffs allege that the mishandling of their loan modification requests, the failure to grant their loan modification requests, and/or the miscommunication relating to the loan modification process suffices as "moral blame," the Court is at a loss to see how U.S. Bank's conduct was willful or part of a scheme to defraud the Plaintiffs. Plaintiffs Vincent Chambers, Robert Crocker, Charlene McCormick, and Gerald Schiff each submitted a separate loan modification application to U.S. Bank, each of which was denied, or is still currently pending for different reasons.[8] Thus, this is not the case where each Plaintiff submitted an application and was treated the same way, or was told the same misrepresentations by U.S. Bank. *Ottolini*, 2011 WL 3652501 at *7 ("there is no suggestion that the mishandling of [plaintiff's] application was willful or part of a pattern or anything more than ordinary negligence"). The same is true with respect to the final *Biakanja* factor, as courts have found that the policy of preventing future harm cuts both in favor and against imposing a legal duty on lenders. *Id*. On the one hand, imposing liability on lenders may provide an incentive to handle modification requests timely, yet on the other hand, imposing a legal duty on lenders could serve as a disincentive to lenders from offering modifications in the first place. *Id*. Accordingly, the Court finds the final two factors also weigh against imposing a legal duty on U.S. Bank.

---

[8] "Ms. McCormick's second loan modification is currently pending review." (Doc. No. 30 at 23:12.) "Later, [Vincent] Chambers did successfully submit a modification application to US Bank." (Doc. No. 30 18:2-3.) "Each time [Gerald] Schiff's modifications were denied." (Doc. No. 30 at 24:1-2.) "Robert Crocker, Lois' son, alleges that he attempted to modify the loan in 2009, but was denied . . ." (Doc. No. 32 3:9-10.)

Therefore, after a consideration of the factual allegations presented by Plaintiffs Vincent Chambers, Robert and William Crocker, Charlene McCormick, and Gerald Schiff, in light of the *Biakanja* factors and Ninth Circuit case law, the Court finds imposition of a legal duty on U.S. Bank unwarranted. *Biakanja*, 49 Cal. 2d at 650. Moreover, because the Court finds further amendment would be futile, it is therefore unnecessary to address whether the above stated Plaintiffs have also sufficiently alleged a corresponding breach, causation, and damages.[9]  Accordingly, U.S. Bank's motion to dismiss as to Plaintiffs Vincent Chambers, Robert and William Crocker, Charlene McCormick, and Gerald Schiff is therefore GRANTED with prejudice.

### 2.    The Kidd Loan

Next, the Kidds allege that U.S. Bank owed them a legal duty of care by making affirmative misrepresentations that their past loan payments, which had originally been made to Downey, but were never properly credited to their account, would be credited to the principal balance of their loan.  (Doc. No. 30 at 20:16-28.)  The Kidds allege this duty was breached by U.S. Bank when U.S. Bank failed to properly credit the payments to their account, which has caused a loss of equity in their home, severe stress, and the risk of imminent foreclosure.  (Doc. No. 30 at 21:26-27.)  While the Court finds the Kidds have arguably pled that U.S. Bank may in fact owe them a legal duty of reasonable care under the *Biakanja* factors, based on these affirmative misrepresentations, the Court finds the Kidds have nonetheless failed to meet the heightened pleading standard required

---

[9]  Nonetheless, the Court is at a loss to see how these Plaintiffs could allege damages caused by U.S. Bank's alleged wrongful conduct. *See, e.g., Scotten v. First Horizon Home Loan Corp.*, CIV. 2:12-1266 WBS, 2012 WL 3277104 (E.D. Cal. Aug. 9, 2012) ("plaintiffs admit that they fell behind on their mortgage payments and make no allegations that they were entitled to a modification or should have been offered a modification . . . [t]he potential loss of their home is caused by their delinquency, which they do not allege was caused by defendants' actions."); *Ragland v. U.S. Bank Nat. Assn.*, 209 Cal. App. 4th 182, 207-08 (Cal. Ct. App. 2012) (finding no relationship between borrower and lender giving rise to a duty the breach of which would permit borrower to recover emotional distress damages based on negligence). *See also Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (concluding that district court did not abuse discretion in dismissing without leave to amend because of futility); *Gordon v. City of Oakland*, 627 F.3d 1092, 1094 (9th Cir. 2010) (leave to amend may be denied if amendment would be futile).

under Rule 9(b).  *See Glen Holly Entm't, Inc. v. Tektronix, Inc.*, 100 F. Supp. 2d 1086, 1093 (C.D. Cal.1999) ("Claims for fraud and negligent misrepresentation must meet the heightened pleading requirements of Rule 9(b)"); *U.S. Concord, Inc. v. Harris Graphics Corp.*, 757 F. Supp. 1053, 1058 (N.D. Cal.1991).

Negligent misrepresentation is a form of deceit, which requires proof of: (1) a misrepresentation of a past or existing material fact; (2) without reasonable grounds for believing it to be true; (3) with intent to induce the plaintiff's reliance; (4) ignorance of the truth and justifiable reliance by the plaintiff; and (5) damages.  *See Fox v. Pollack*, 181 Cal. App. 3d 954, 962 (Cal. Ct. App. 1986).  Allegations based on affirmative misrepresentations must meet the heightened pleading standard required under Rule 9(b) in order to provide the defendant with the "who, what, when, where, and how of the misconduct charged."  *Sherman v. Stryker Corp.*, 2009 WL 2241664, at *3 (C.D. Cal. Mar. 30, 2009) (citing *Vess*, 317 F.3d at 1106).  Here, the Kidds have failed to meet this standard.  Besides alleging that "they were told not to worry [about making] payments to U.S. Bank during the modification process," the Kidds have failed to specify who told them to stop making payments, whether these past payments were in fact going to be credited to their account, and the approximate date and time of these alleged conversations.  (Doc. No. 30 at 21:17-18.)

Moreover, even though the Kidds allege that they were negligently informed by U.S. Bank that past mortgage payments would be credited to their account, thereby reducing the principal amount due and owing under their loan, the Court is also cognizant that the Kidds signed a Modification Agreement with U.S. Bank on September 3, 2009, wherein the Kidds agreed to the amount of the principal balance currently due on their loan.  (Doc. No. 32, Def.'s RJN, Ex. L at 101) (stating that the principal balance as of September 1, 2009 was $502,363.20).  Accordingly, because Plaintiffs did not oppose U.S. Bank's request for judicial notice, (Doc. No. 35 at 2 n.1), nor have the Kidds explained how these alleged misrepresentations have continuing effect after the September 1, 2009 Modification Agreement, the Court finds the Kidds have once again failed to

1  sufficiently state a claim for negligent servicing of their loan based on these alleged

2  misrepresentations.[10]

3       Accordingly, the Court GRANTS U.S. Bank's motion to dismiss as to Plaintiffs

4  Douglas and Sylina Kidd, providing the Kidds limited leave to amend to correct the

5  deficiencies noted therein.  No further allegations may be alleged absent leave of Court.

6  In the event the Kidds elect to amend their complaint, the Kidds must clearly articulate:

7  (1) the substance of these alleged misrepresentations; (2) when these alleged misrepresen-

8  tations occurred; (3) who made these alleged misrepresentations; (4) how these misrepre-

9  sentations still have effect after the September 1, 2009 Modification Agreement; and (5)

10  how these representations have caused them harm.  *See, e.g., Cooper v. Pickett*, 137 F.3d

11  616, 627 (9th Cir.1997) (stating that fraud allegations must be accompanied by "the who,

12  what, when where and how" of the misconduct charged); *Neubronner v. Milken,* 6 F.3d

13  666, 671-672 (9th Cir.1993) ("The complaint must specify facts as the times, dates,

14  places, benefits received and other details of the alleged fraudulent activity."); *Scotten*,

15  2012 WL 3277104, *6 ("plaintiffs admit that they fell behind on their mortgage payments

16  and make no allegations that they were entitled to a modification or should have been

17  offered a modification . . . [t]he potential loss of their home is caused by their delin-

18  quency, which they do not allege was caused by defendants' actions").

19  ## CONCLUSION

20       For the reasons set forth above, the Court GRANTS U.S. Bank's motion to dismiss

21  with prejudice as to Plaintiffs Vincent Chambers, Robert and William Crocker, Charlene

22  McCormick, and Gerald Schiff; and GRANTS U.S. Bank's motion to dismiss without

23  prejudice as to Plaintiffs Douglas and Sylina Kidd.  The Kidds must file an amended

24  complaint, if they elect to do so, no later than **April 12, 2013**.

25

26     [10] Whether or not the modification provided sufficient relief is irrelevant as there is
no duty to modfy. *Mabry*, 185 Cal. App. 4th at 231; *Renteria v. United States*, 452

27  F.Supp.2d 910, 922-923 (D.Ariz.2006) (borrowers had to rely on their own judgment and
risk assessment to determine whether or not to accept loan.); *Sierra-Bay*, 227 Cal. App.3d

28  at 334 ("A commercial lender is not to be regarded as the guarantor of a borrower's
success and is not liable for hardships which may befall a borrower.")

1    IT IS SO ORDERED.

2

3    DATED:  March 12, 2013

4                                                    _____
                                                     Hon. Anthony J. Battaglia
5                                                    U.S. District Judge

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

12cv433 AJB (WMC)